|  |  |
|---|---|
| ROBERT S. PEREIRA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:24-cv-10979 |
| RUSHMORE LOAN MANAGEMENT | ) |
| SERVICES, LLC, AND J.P. MORGAN | ) |
| MORTGAGE ACQUISITION CORP., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

Defendants Rushmore Loan Management Services, LLC ("Rushmore"), and J.P. Morgan Mortgage Acquisition Corp. ("JPM" and together with Rushmore, the "Defendants") herein submit this memorandum in support of their motion to dismiss the complaint filed by plaintiff Robert S. Pereira ("Plaintiff") in Essex Superior Court on March 11, 2024 (the "Complaint") and removed to the U.S. District Court for the District of Massachusetts on April 17, 2024 prior to Plaintiff effectuating service.

Dismissal of this action is appropriate because publicly recorded documents establish that Defendants possess the necessary authority to invoke the statutory power of sale on Plaintiff's real property located at 26A Endicott Street, Peabody, Massachusetts (the "Property") as the current mortgagee. Second, although Plaintiff appears to acknowledge receipt of the 90-day right to cure notice sent to him on March 6, 2023 (the "Cute Notice"), his only remaining claim is premised on the inaccurate allegation that Defendants' Cure Notice failed to comply with the terms of the Mortgage. To the contrary, on March 6, 2023, Defendant sent Plaintiff via both certified mail and

first class mail a Cure Notice that complies with the terms of the Mortgage on its face. Specifically the Cure Notice advised him of both his "right to reinstate after acceleration" and his "right to bring a court action." Because his entire Complaint is premised on the demonstrably false allegations that (1) Defendants' lack standing to foreclose and (2) the Cure Notice failed to comply with the Paragraph 22 of his Mortgage, Plaintiff fails to state a plausible claim for relief and dismissal is proper.

<u>RELEVANT FACTUAL BACKGROUND</u>

1. On or about March 11, 2024, Plaintiff initiated the State Court Action by filing a Civil Complaint (the "Complaint") with the Essex County Superior Court seeking, among other things, an award of money damages and a declaratory judgment that Defendants lack standing to foreclosure and sell the Property, that any foreclosures and sales of the Property are ineffective, without force or effect and void, that any default notices sent are invalid and void, and that any foreclosure sale conducted by Defendants be declared null and void.

2. As it relates to the Property, Plaintiff granted a mortgage to Mortgage Electronic Registration Systems, Inc. as nominee for Fleet National Bank, dated July 14, 2003 (the "Mortgage") and recorded on July 18, 2003, in Book 21293, at Page 173 with the Essex County Registry of Deeds (the "Registry of Deeds"). Compl. ¶¶ 12, 13; Ex. 1, Mortgage.

3. Paragraph 15 of the Mortgage specifies the method of sending Notices as follows: "Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." Compl. ¶ 13; Ex. 1, Mortgage ¶ 15.

4. The Mortgage states at paragraph 22 as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in

this Security Instrument... The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Compl. ¶ 14; Ex. 1, Mortgage ¶ 22.

5.      Mortgage Electronic Registration Systems, Inc., as nominee for Fleet National Bank, assigned the Mortgage to PHH Mortgage Corporation through an assignment of mortgage dated September 28, 2010, and recorded on October 1, 2010 in Book 29826, at Page 273 with the Registry of Deeds (the First Assignment"). Compl. ¶ 15.

6.      Mortgage Electronic Registration Systems, Inc., as nominee for Fleet National Bank, assigned the Mortgage to PHH Mortgage Corporation through an assignment of mortgage dated April 2, 2013, and recorded on April 23, 2013 in Book 32402, at Page 109 with the Registry of Deeds (the "Second Assignment").  Compl. ¶ 16.

7.      PHH Mortgage Corporation assigned the Mortgage to New Residential Mortgage LLC through an assignment of mortgage dated November 20, 2017, and recorded on November

24, 2017 in Book 36355, at Page 524 with the Registry of Deeds (the "Third Assignment"). Compl. ¶ 17.

8.     New Residential Mortgage LLC assigned the Mortgage back to PHH Mortgage Corporation through and assignment of mortgage dated December 21, 2017, and recorded on January 3, 2018 in Book 36448, at Page 458 with the Registry of Deeds (the "Fourth Assignment"). Compl. ¶ 18.

9.     PHH Mortgage Corporation assigned the Mortgage back to New Residential Mortgage LLC through an assignment of mortgage dated November 8, 2020 and recorded on November 9, 2020 in Book 39156, at Page 363 with the Registry of Deeds (the "Fifth Assignment"). Compl. ¶ 19.

10.     New Residential Mortgage LLC, by NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, its attorney-in-fact, assigned the Mortgage to NewRez LLC d/b/a Shellpoint Mortgage Servicing through an assignment of mortgage dated March 11, 2021, and recorded on March 25, 2021 in Book 39686, at Page 191 with the Registry of Deeds (the Sixth Assignment"). Compl. ¶ 20; Ex. 2, Sixth Assignment[1].

11.     NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing assigned the Mortgage to U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee for RCF 2 Acquisition Trust through an assignment of mortgage dated

---

[1] Because the Complaint does not appear to raise any claims relating to the earlier assignment, Defendants have included information of their public recording with the Registry of Deeds but, for brevity, have not attached copies of the earlier assignments. Defendants can supplement the earlier assignments of mortgage, should they become relevant to any issue in this case.

June 1, 2022 and recorded on June 28, 2022 in Book 41031, at Page 325 with the Registry of Deeds (the "Seventh Assignment"). Compl. ¶ 21; Ex. 3, Seventh Assignment[2]

12.     U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee for RCF 2 Acquisition Trust, by Selene Finance LP, its attorney-in-fact assigned the Mortgage to J.P. Morgan Acquisition Corp. through an assignment of mortgage dated January 9, 2023 and recorded on February 8, 2023 in Book 41431, at Page 075 at the Registry of Deeds (the "Eighth Assignment). Compl. ¶ 23; Ex. 4, Eighth Assignment.

13.     The Complaint further alleges that Defendants did not send and Plaintiff did not receive any default notice or acceleration notice in accordance with Paragraphs 15 and 22 of the Mortgage, while referencing the Cure Notice dated March 6, 2023. Compl. ¶¶ 26, 29; Ex. 5, Cure Notice.

14.     Paragraph 22 of the Mortgage requires that prior to acceleration and foreclosure, the Defendants were required to send Plaintiff a notice which informed Plaintiff that he had a "right to reinstate after acceleration". Ex. 1, Mortgage, ¶ 22.

15.     The terms of Plaintiff's "right to reinstate after acceleration" are contained in Paragraph 19 of the Mortgage. Ex. A, Mortgage ¶ 19.

16.     On March 6, 2023, Defendants sent the Cure Notice to Plaintiff via first class mail and certified mail advising him of his default under the terms of the Note and Mortgage and his 90-day right to cure such default pursuant to Mass. Gen. Laws ch. 244, § 35A. Ex. 5.

17.     The Cure Notice expressly provides that:

---

[2] Although NewRez LLC was the assignee of the Sixth Assignment on its face, the Complaint alleges that it was not the assignee of any assignment prior to the Seventh Assignment and therefore the Seventh Assignment is null and void. Compl. ¶ 21.

a.      Borrower was in default for failing to pay the monthly mortgage payments due beginning September 1, 2022 until the present.  *Cf.* Ex. 5, Cure Notice *with* Ex. 1, Mortgage ¶ 22 (notice must inform borrower of "(a) the default")

b.      Borrower could cure the default by paying $8,638.85.  *Cf.* Ex. 5, Cure Notice *with* Ex. 1, Mortgage ¶ 22 (notice must inform borrower of "(b) the action required to cure the default")

c.      Borrower had to pay the cure amount by June 4, 2023, which was more than 30 days after the March 6, 2023 date of the Notice.  *Cf.* Ex. 5, Cure Notice *with* Ex. 1, Mortgage ¶ 22 (notice must inform borrower of "(c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured").

d.      "If you pay the past due amount and any additional monthly payments, late charges or fees that may become due between the date of this notice and the date when you make your payment, your account will be considered up-to-date and you can continue to make your regular monthly payments."  Ex. 5, Cure Notice.

d.      "After 06/04/2023, you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place."  Ex. 5, Cure Notice.

e.      "Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the property. *Cf.* Ex. 5, Cure Notice *with* Ex. 1, Mortgage ¶ 22 (notice must inform borrower of "(d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.")

f.    The Cure Notice further advised that "You have the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." *Cf.* Ex. 5, Cure Notice *with* Ex. 1, Mortgage ¶ 22 ("The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.").

18.    Under the section entitled "Partial Payments", Plaintiff was advised that Defendant Rushmore "reserves the right to accept or reject a partial payment of the total amount due without waiving its right to proceed with foreclosure." Ex. 5, Cure Notice.

19.    On its face, the Cure Notice complied with Defendants' obligations under Paragraph 22 of the Mortgage. *Cf.* Ex. 1, Mortgage ¶ 22 *with* Ex. 5, Cure Notice.

APPLICABLE LEGAL STANDARDS

"To survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Jones v. Experian Info. Sols., Inc.*, 141 F. Supp. 3d 159, 161 (D. Mass. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The First Circuit has explained that "[t]he plausibility inquiry necessitates a two-step pavane." *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (citing *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013)). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the

misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678)). The court "need not credit a complaint's 'bald assertions' or legal conclusions." *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996)).

When ruling on a Rule 12 motion, the Court "must consider the complaint, documents annexed to it, and other materials fairly incorporated within it," which "sometimes includes documents referred to in the complaint but not annexed to it" and "matters that are susceptible to judicial notice." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004). The Court can also consider certain extrinsic information, such as matters of public record, without converting a motion to dismiss into a motion for summary judgment. *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013); *see also Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993) (court may consider "documents the authenticity of which are not disputed by the parties; for official public records; **for documents central to plaintiffs' claim**; or for documents sufficiently referred to in the complaint") (emphasis added).

Here, while not annexed to the Complaint, the Mortgage is referenced throughout, is a matter of public record, and is properly before this Court. Additionally, central to the Plaintiffs' claim is the Cure Notice mailed to the Property. "When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Accordingly, this Court may also consider the Cure Notice sent by first class and certified mail to the Plaintiff at the Property. Ex. 5, Cure Notice.

Because the Cure Notice is central to Plaintiff's allegations and directly contradicts the allegations of the Complaint, this Court need not accept the allegations as true and, with the Mortgage and Cure Notice properly in the record before this Court, Plaintiff's allegations that the Notice failed to comply with the terms of the Mortgage fail to state a plausible claim for relief and must be dismissed. *See Benjamin v. Fremont Inv. & Loan*, No. 17-11727-PBS, 2018 WL 4017595, at *2 (D. Mass. Aug. 22, 2018) (taking judicial notice at the motion to dismiss stage of a recorded Affidavit Regarding Note Secured by Mortgage Being Foreclosed).

## ARGUMENT

Pursuant to G.L. c. 183, §21, a mortgagee or its successors and assigns may sell the mortgage premises, by public auction on or near the premises subject to the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the property by proper deed to the purchaser absolutely and in fee simple, and such sale shall forever bar the mortgagor from all right and interest in the mortgage premises, whether at law or in equity.

As explained by the First Circuit Court of Appeals:

Massachusetts is a nonjudicial foreclosure state, so banks generally foreclose by exercising the statutory power of sale. In order to exercise this statutory power of sale, the bank must satisfy a number of requirements. Two of these requirements are relevant here. First, the foreclosing bank must hold both the note and the mortgage in order to have standing to sell the property at a foreclosure sale. If it does not, the foreclosure is void. Second, the foreclosing bank must strictly comply with the default notice provisions in paragraph 22 of the mortgage. Again, failure to do so renders the foreclosure void.

When borrowers challenge an entity's standing to foreclose, they often assert defects in the chain of mortgage assignments that ends with that entity.

Under Massachusetts law, the borrowers themselves have standing to press such challenges to the validity of a mortgage assignment when a defect renders the assignment void, but not when it renders the assignment merely voidable by one of the parties to the assignment.

*Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 156–57 (1st Cir. 2017).

"Whether a mortgage assignment in Massachusetts is valid or void is determined by statute. If the assignment is (1) made by the mortgage holder or its representative, (2) executed before a notary public, and (3) signed by an authorized employee of the mortgage holder, it is effective to pass legal title and cannot be shown to be void." *Giannasca v. Deutsche Bank Nat'l Tr. Co.*, 95 Mass. App. Ct. 775, 778 (2019), *review denied, case remanded*, 484 Mass. 1102 (2020) (citing G. L. c. 183, § 54B; *Bank of N.Y. Mellon Corp. v. Wain*, 85 Mass. App. Ct. 498, 503 (2014)).

"When determining whether a mortgagor has standing to challenge a given assignment, a reviewing court does not credit a mortgagor's conclusory allegations regarding whether an assignment is "void," but instead reviews the texts of the assignments themselves in light of Massachusetts law to determine whether the complaint-at-issue sets forth allegations that the assignment is void or merely voidable." *Paulino v. Bank of New York Mellon N.A.*, No. CV 22-10261-MRG, 2024 WL 1466615, at *3 (D. Mass. Mar. 31, 2024) (typographical error in property description insufficient to confer standing for borrowers to challenge assignment and mortgagee's authority to foreclose); *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 10 (1st Cir. 2014) ("Specific to the mortgage context, a void mortgage assignment is one in which the putative assignor never properly held the mortgage and, thus, had no interest to assign.") (internal quotation omitted).

**A. Defendants' predecessor in interest, NewRez LLC, validly assigned its interest in the Mortgage through the Seventh Assignment**.

Section 54B of Chapter 183 provides, in relevant part, that "[an] assignment of [a] mortgage ... if executed before a notary public ... by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal,

investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position vice president ... of the entity holding such mortgage ... shall be binding upon such entity." Mass. Gen. Laws ch. 183, § 54B. Here, the Complaint does not specifically identify Plaintiff's challenge to the Seventh Assignment.

Through the Sixth Assignment, New Residential Mortgage LLC, by NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, its attorney-in-fact, assigned the Mortgage to "NewRez LLC d/b/a Shellpoint Mortgage Servicing." Ex. 2. Through the Seventh Assignment, NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing assigned the Mortgage to U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee for RCF 2 Acquisition Trust. Ex. 3. Both the Sixth Assignment and the Seventh Assignment were executed by persons purporting to hold sufficient capacity to execute a binding assignment pursuant to Section 54B of Chapter 183. Presumably, then, Plaintiff's challenge to the validity of the Seventh Assignment is based solely on NewRez, LLC's inclusion of its formerly used name "f/k/a New Penn Financial, LLC".

Defendants are unaware of any decision holding that an assignment is void by virtue of the assignor entity which held the legal interest at the time ("**NewRez LLC** d/b/a Shellpoint Mortgage Servicing") including its f/k/a identification ("**NewRez LLC** f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing) when it subsequently assigned its interest in the Mortgage. The legal entity, NewRez LLC, was both the assignee of the Sixth Assignment and the assignor of the Seventh Assignment.

Even if, *arguendo*, NewRez LLC should not have included its f/k/a identity in the Seventh Assignment, in similar albeit not perfectly analogous situations, courts have held that minor scrivener's errors do not invalidate a lender's authority to foreclose. *See Pinto v. HSBC Bank,*

*N.A.*, No. CIV.A. 12-11332-LTS, 2012 WL 6622493, at *1 (D. Mass. Dec. 18, 2012) (Magistrate

Order), app dism. (1st Cir. 13-1099 Mar. 27, 2013) (mistake in instrument of conveyance did not

invalidate foreclosure); *U.S. Bank Nat'l Assn et al. v. Torres*, 559 F. Supp. 3d 62, 65 (D.R.I. 2021)

(mistake in mane of trust for with trustee held interest does not effect trustee's authority to

foreclose); *Galvin*, 852 F.3d at 159 (rejecting borrower's claim that endorsement to "U.S. Bank as

Trustee," was insufficient to grant holder status to the foreclosing entity "U.S. Bank as Trustee

Relating to Chevy Chase Funding, LLC Mortgage Back Certificates Series 2007–1").

Accordingly, the first part of Count I relating to purported defects in NewRez, LLC's

assignment of the Mortgage through the Seventh Assignment does not plausibly state a claim for

relief and should be dismissed.[3]

**B. Defendants' Notice Complied with ¶ 22 of the Mortgage.**

The second part of Plaintiff's claim in Count I challenges compliance with ¶ 22 of the

Mortgage, which requires that the lender provide five pieces of information in a notice to the

borrower prior to acceleration. *See* Ex. 1, Mortgage ¶ 22. Each of the five pieces of information

that JPM, or Rushmore as JPM's servicer, were required to provide to the Plaintiff under Paragraph

22 of the Mortgage match the actual Cure Notice that Rushmore sent to Plaintiff. Therefore,

Plaintiff cannot plausibly state a claim for relief on such grounds.

Plaintiff claims that the inclusion of the section entitled "Partial Payments" renders the

Cure Notice defective because Plaintiff was advised under that section that Defendant Rushmore

"reserves the right to accept or reject a partial payment of the total amount due without waiving its

---

[3] JPM acquired its interest via the Eighth Assignment, but it appears from the Complaint that the
only challenge to the Eighth Assignment stems from Plaintiff's underlying challenge to the
Seventh Assignment by which the assignee of that assignment purportedly did not obtain title.
*See* Compl. ¶¶ 39-43.

right to proceed with foreclosure." Compl. ¶¶ 31-33. According to Plaintiff, after acceleration, the total amount due would equal the accelerated amount and therefore, Rushmore's reservation of a right to reject a partial payment was contrary to his reinstatement rights. *Id.* This argument fails for several reasons.

First, Plaintiff is applying a tortured reading of the Cure Notice. Paying the entire accelerated amount of the loan would pay the loan off entirely, leaving no loan to reinstate. Nothing on the face of the Cure Notice could plausibly suggest that Plaintiff was required to pay the accelerated loan in full. Instead, the Cure Notice expressly notified Plaintiff that his default was the result of his failure to pay the monthly mortgage payments due beginning September 1, 2022 until the present, that he could cure the default by paying "**the past due amount of $8,638.85 on or before June 4, 2023**", and that "**After 06/04/2023, you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place**." The Cure Notice cannot plausibly be interpreted as contradicting Plaintiff's right to reinstate by paying the defined "past due amount before a foreclosure sale takes place." Ex. 5.

Second, beyond including each piece of information required by Paragraph 22(a)-(d) of the Mortgage, the Cure Notice also expressly advised Plaintiff that "You have the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." This language mirrors ¶ 22 of the Mortgage. Unlike in *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226, 237, 33 N.E.3d 1213, 1222 (2015), where the mortgagee's notice failed to inform the borrower of "the right to bring a court action to assert the non-existence of a default or any other defense of [the plaintiffs] to acceleration and sale", the Cure Notice in this case contains all of the contractual requirements set forth in the Mortgage and expressly advised Plaintiff of "the right to reinstate the loan after acceleration and the right to bring

a court action to assert the non-existence of a default or any other defense to acceleration and sale." Ex. 5. Because Plaintiff's claims for relief are dependent on the allegation that Defendants failed to send a notice in compliance with ¶ 22 of the Mortgage, the Complaint fails to plausibly state a claim for relief.

Third, although the Cure Notice provided that "[f]ailure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the property", nothing within the Cure Notice plausibly suggests Plaintiff's leaps in reasoning that the reference to potential acceleration contradicted his reinstatement rights. Here, as in *Thompson v. JPMorgan Chase Bank, N.A.*, 486 Mass. 286, 293 (2020), the Mortgage requires the lender to provide borrower with notice of his "right to reinstate," but it does not require the lender to provide the borrower with notice of the specific mortgage terms relating to his rights to reinstatement. That right is controlled by the terms of the Mortgage. *Thompson v. JPMorgan Chase Bank, N.A.*, 486 Mass. 286, 293–94, 158 N.E.3d 35, 42 (2020) (construing the mortgage as a whole, including paragraphs relating to mortgagee's ability to extend reinstatement deadline and honor limitation provided by applicable law, notice of right to reinstate held not deceptive because "the language of the mortgage itself gives notice to the plaintiffs that the five-day limitation of paragraph 19 could be extended by either the discretion of the mortgagee or, as is the case here, relevant provisions of State law"). Specifically, Paragraph 19 of the Mortgage provides that the conditions to Plaintiffs right to reinstatement of the Mortgage include "that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; [and] (b) cures any default of any other covenants or agreements …" Mortgage, ¶ 19 (emphasis added).

Defendants had no obligation to notify Plaintiff of the contents of this paragraph – only that he had a "right to reinstate", which the Cure Notice clearly advises. As a result, to the extent Plaintiff elected to reinstate, which he has never attempted to do after his default in September, 2022, he was notified of this right, which included the obligation to cure the default "as if no acceleration had occurred" in accordance with the terms of the Mortgage – a provision that clearly contradicts Plaintiff's hypothetical interpretation that he was required to pay the entire post-acceleration amount, which would have paid the loan off in full, leaving nothing to reinstate.

Finally, it is unclear if Plaintiff alleges a lack of receipt of the Cure Notice, or simply alleges that the Cure Notice referenced and quoted in the Complaint was not compliant with Paragraph 22 of the Mortgage.[4] The Mortgage does not require anything beyond service by first-class mail for notices pursuant to ¶ 22, but to the extent that Plaintiff is alleging lack of receipt and may cite to a statutory requirement to establish that a notice was sent, the Cure Notice was also sent certified mail, which courts have recognized as sufficient to accomplish noticed "sent by registered mail" as referenced in Massachusetts' related foreclosure statutes G.L. c. 244, § 14. *See* Ex. 5; *Stephens-Martin v. Bank of New York Mellon Trust Co.*, 2013 WL 5508415 at *11, n.27 (Mass. Land Court, Oct. 1, 2013) (citing G.L. c. 4, §7).[5] Moreover, the tracking number on the Cure Notice appears as delivered to Plaintiff's address via the United States Postal Service and courts have found allegations of lack of receipt to be immaterial under similar circumstances.

---

[4] Paragraph 33 of the Complaint appears to include a quote from the Cure Notice that is not actually contained within the Cure Notice. *Cf.* Compl. ¶ 33 *with* Ex. 5.

[5] "As with the notices under §§ 35A and 35B, the notice requirement of G.L. c. 244, § 14 'is satisfied by mailing and non-receipt is irrelevant.'" *Wells Fargo Bank, N.A. v. Coffin*, 2018 WL 5532497 at *10 (Mass. Land Ct. Oct. 29, 2018) (citing *Hull v. Attleboro Sav. Bank*, 33 Mass. App. Ct. 18, 25 (1992); *see In re Bailey*, 468 B.R. 464, 473 (Bankr. D. Mass 2012)). "Nowhere in... the relevant statutes... is it required that the [mortgagee] confirm receipt of Notice." *Id.* (citing *Dooling v. James B. Nutter & Co.*, 139 F. Supp. 3d 505, 512 (D. Mass. 2015)).

*Donahue v. Fed. Nat'l Mortg. Ass'n*, No. 17-CV-10635-DJC, 2019 WL 2176939, at *5 (D. Mass. May 20, 2019), aff'd, 980 F.3d 204 (1st Cir. 2020) (find lack of receipt of letter "to be immaterial"); *Dan-Harry v. PNC Bank, N.A.*, No. 17-CV-136WES, 2018 WL 5044235, at *5 (D.R.I. Oct. 17, 2018) (observing that "[a] mortgagor's denial of having received the letter does not give rise to a factual dispute regarding the mortgagee's compliance with the requirement to send it").

Because Defendants complied with the notice obligations contained within ¶ 22 of the Mortgage, Plaintiff cannot plausibly establish the alleged breach of Paragraph 22's conditions to invoke the statutory power of sale and accordingly the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully pray that this Court dismiss the Complaint and grant such other relief as is just and proper.

Respectfully submitted,

**RUSHMORE LOAN MANAGEMENT SERVICES, LLC, and J.P. MORGAN MORTGAGE ACQUISITION CORP.,**

By their attorneys,

*/s/ Michael K. Lane*
Michael K. Lane (BBO# 673501)
mlane@daypitney.com
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
Tel.: (617) 345-4624

DATED:        May 8, 2024

## LOCAL RULE 7.1(a)(2) CERTIFICATE OF COMPLIANCE

I, Michael K. Lane, hereby certify that on May 8, I conferred with counsel for Plaintiff via telephone in a good faith effort to narrow or resolve the issues raised herein but we were unable to reach an agreement and therefore require this Court's adjudication.

*/s/ Michael K. Lane*
Michael K. Lane

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic (NEF) and paper copies will be sent to those indicated as non-registered participants on May 8, 2024.

*/s/ Michael K. Lane*
Michael K. Lane