UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT PEREIRA,<br><br>    Plaintiff,<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES LLC and J.P. MORGAN MORTGAGE ACQUISITION CORP.,<br><br>    Defendants. | No. 1:24-cv-10979-JEK |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

**KOBICK, J.**

Plaintiff Robert Pereira filed this action against defendants Rushmore Loan Management Services LLC and J.P. Morgan Mortgage Acquisition Corp., seeking to avert foreclosure of his property in Peabody, Massachusetts. He claims that the defendants are not valid mortgagees of his property because of an allegedly void assignment in the chain of title. He also contends that Rushmore, as J.P. Morgan's loan servicer, sent him a defective cure notice that did not strictly comply with Massachusetts law or the terms of his mortgage contract. Pending before the Court is the defendants' motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because the mortgage was validly assigned and the notice is contractually and statutorily compliant, the motion to dismiss will be granted.

BACKGROUND

The Court recounts the facts based on the allegations in the complaint and "the content of documents . . . sufficiently referenced in the complaint." *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024). The documents incorporated by reference in the complaint include

the mortgage, certain assignments of that mortgage, and the cure notice. *See* ECF 9, at 6-9, 13, ¶¶ 13-23, 30, 41 ("Complaint");[1] ECF 11-1 through 11-5.

Pereira has owned property at 26A Endicott Street in Peabody, Massachusetts since July 2003. Complaint ¶¶ 5, 10-11. On July 14, 2003, he granted a mortgage on the property to secure a $250,000 loan. *Id.* ¶ 12; ECF 11-1, at 1-3. The mortgage identified Fleet National Bank as the lender and Mortgage Electronic Registration Systems ("MERS"), as nominee for Fleet, as the mortgagee. Complaint ¶ 12; ECF 11-1, at 1-2. Paragraph 22 of the mortgage, which applies in the event of a default on loan payments, specifies the contents of the notice that must be given before the mortgagee can accelerate the loan and begin foreclosure proceedings. ECF 11-1, ¶ 22.

From 2010 to 2023, eight assignments of Pereira's mortgage were recorded in the Essex County Registry of Deeds. Complaint ¶¶ 15-23. In September 2010 and again in April 2013, MERS assigned the mortgage to PHH Mortgage Corporation. *Id.* ¶¶ 15-16. In November 2017, PHH Mortgage assigned the mortgage to New Residential Mortgage, LLC, which assigned it back to PHH Mortgage one month later. *Id.* ¶¶ 17-18. After PHH Mortgage again assigned the mortgage to New Residential Mortgage, LLC in November 2020, New Residential Mortgage LLC, by NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, assigned the mortgage to NewRez LLC d/b/a Shellpoint Mortgage Servicing in March 2021. *Id.* ¶¶ 19-20; ECF 11-2. In June 2022, NewRez LLC *f/k/a New Penn Financial, LLC* d/b/a Shellpoint Mortgage Servicing assigned the mortgage to U.S. Bank Trust National Association. Complaint ¶ 21; ECF 11-3. Pereira alleges that this assignment is "null and void" because the prior assignee is allegedly different from the assignor, given the assignment's inclusion of "f/k/a New Penn Financial, LLC."

---

[1] Part of the complaint has duplicative paragraph numbers. This citation is to the second paragraph numbered 41 in the complaint.

Complaint ¶¶ 21-22. In January 2023, U.S. Bank assigned the mortgage to defendant J.P. Morgan. *Id.* ¶ 23; ECF 11-4.

On March 6, 2023, Rushmore, as J.P. Morgan's servicer, sent a "90-Day Right to Cure Your Mortgage Default" notice to Pereira via United States Postal Service certified mail. Complaint ¶¶ 29-30; ECF 11-5, at 1. The body of the cure notice conformed to the template notice prescribed by the Division of Banks at 209 Code Mass. Regs. 56.04, which implements M.G.L. c. 244, § 35A. *Compare* ECF 11-5, at 1-3, *with* 209 Code Mass. Regs. 56.04. It informed Pereira that he had failed to make his monthly loan payments from September 2022 through March 2023, and that he "must pay the past due amount of $8,638.85 on or before 06/04/2023, which is 90 days from the date of this notice." ECF 11-5, at 1. It stated that "[a]fter 06/04/2023, [Pereira could] still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place." *Id.* at 2. And it further provided that "[i]f [Pereira] do[es] not pay the total past due amount of $8,638.85 and any additional payments that may become due by 06/04/2023, [he] may be evicted from [his] home after a foreclosure sale." *Id.*

At the end of the cure notice, after the signature block, was an attachment titled "Additional Disclosures." *Id.* at 4-5. That attachment, under a "Contractual Disclosures" heading, first stated that "[f]ailure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the property," and that Pereira "ha[s] the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." *Id.* at 4. Under the next heading, labeled "Right to Redeem," it stated that Pereira "may redeem the property by paying the total amount due prior to the foreclosure sale." *Id.* Further down, under a heading labeled "Partial Payments," it added that Rushmore "reserves the right to accept or reject a partial

payment of the total amount due without waiving its right to proceed with foreclosure." *Id.* This last statement, in Pereira's view, renders the March 2023 notice defective.

In March 2024, Pereira filed this complaint in Essex Superior Court against Rushmore and J.P. Morgan. Although the complaint asserts only one count, it appears to allege two distinct claims: (1) a claim that a break in the chain of assignments of the mortgage prevents J.P. Morgan from foreclosing on the mortgage as mortgagee, Complaint ¶¶ 38-43, 45;[2] and (2) a claim that the cure notice is defective because it does not strictly comply with paragraph 22 of the mortgage, *id.* ¶¶ 44-45, 40-44.[3] The complaint seeks, among other things, damages, injunctive relief, and declaratory relief. *Id.* ¶¶ 46-50.[4] Invoking this Court's diversity jurisdiction, the defendants timely removed the case in April 2024. ECF 1. After the defendants moved to dismiss the complaint for failure to state a claim and Pereira opposed that motion, the Court held a hearing and took the matter under advisement. ECF 10, 14, 23.

---

[2] This citation is to the first paragraphs numbered 40-43 and the second paragraph numbered 45 in the complaint.

[3] This citation is to the first paragraphs numbered 44-45 and the second paragraphs numbered 40-44 in the complaint.

[4] Pereira's claims are ripe for review. A claim is not ripe for resolution if it "'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *City of Fall River v. F.E.R.C.*, 507 F.3d 1, 6 (1st Cir. 2007) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). The defendants contend that Pereira merely "attempts to manufacture an ambiguity in the Cure Notice by relying on hypothetical events that have not occurred, and likely will never occur." ECF 26, at 3. But if, as alleged, the cure notice is deficient under the terms of the mortgage, then Pereira could prevent the defendants' impending foreclosure of his property. *See* Complaint ¶ 34; *Pinti v. Emigrant Mtge. Co.*, 472 Mass. 226, 238 n.20 (2015) ("Paragraph 22 demands strict compliance, regardless of the existence, or not, of prejudice to a particular mortgagor."); *U.S. Bank Nat'l Ass'n v. Schumacher*, 467 Mass. 421, 429 (2014) (borrower's claim that "the notice of his ninety-day right to cure a default . . . was deficient . . . should have been raised in an independent equity action in the Superior Court"). And as Pereira points out, he has lost his right to cure, and the defendants can now accelerate the mortgage at any time without notice and proceed with foreclosing on his property. ECF 25, at 2-4. This dispute over the notice is therefore ripe.

**STANDARD OF REVIEW**

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "'whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted,'" *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

**DISCUSSION**

**I.   The Mortgage Was Validly Assigned.**

Pereira first claims that J.P. Morgan is not the mortgagee of his property because of an invalid assignment. In Massachusetts, borrowers like Pereira can "assert defects in the chain of mortgage assignments" if those defects "rende[r] the assignment[s] void." *Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 157 (1st Cir. 2017) (citing *Bank of N.Y. Mellon Corp. v. Wain*, 85 Mass. App. Ct. 498, 502-03 (2014)). The governing statute provides that an "assignment of mortgage . . . executed before a notary public . . . by a person purporting to hold the position of president, vice president, . . . or other officer . . . of the entity holding such mortgage . . . shall be binding upon such entity." M.G.L. c. 183, § 54B. In other words, if "the assignment is (1) made by the mortgage

5

holder or its representative, (2) executed before a notary public, and (3) signed by an authorized employee of the mortgage holder, it is effective to pass legal title and 'cannot be shown to be void.'" *Giannasca v. Deutsche Bank Nat'l Tr. Co.*, 95 Mass. App. Ct. 775, 778 (2019) (quoting *Wain*, 85 Mass. App. Ct. at 503).

Pereira contends that he has plausibly challenged the validity of the assignments of his property's mortgage from 2021 onward because the assignee of the March 2021 assignment is different than the assignor of the June 2022 assignment. ECF 14, at 12-14. Specifically, "NewRez LLC d/b/a Shellpoint Mortgage Servicing" became the assignee in March 2021, but "NewRez LLC *f/k/a New Penn Financial, LLC* d/b/a Shellpoint Mortgage Servicing" later assigned the mortgage to U.S. Bank in June 2022. Complaint ¶¶ 20-21 (emphasis added); ECF 11-2; ECF 11-3. In Pereira's view, the use of the words "f/k/a New Penn Financial, LLC" in June 2022 severed the "unbroken chain of assignments" needed to foreclose on the mortgage. *Giannasca*, 95 Mass. App. Ct. at 777 (quotation marks omitted). In moving to dismiss, the defendants contend that Pereira's claim fails as a matter of law because, at most, the presence of the words "f/k/a New Penn Financial, LLC" is a scrivener's error that does not invalidate the assignment.

The Court agrees with the defendants. The inclusion of the words "f/k/a New Penn Financial, LLC" in the June 2022 assignment neither voids that assignment nor creates, as Pereira argues, a question of fact regarding its validity. That is so because the same legal "entity holding such mortgage"—NewRez LLC—was the assignee of the March 2021 assignment and assignor of the June 2022 assignment. M.G.L. c. 183, § 54B. Pereira does not identify any precedent supporting his position that the mere inclusion of a "formerly known as" name in an assignment voids that assignment. Rather, Massachusetts precedent is clear that "mere scrivener's errors . . . do not invalidate" assignments. *Cent. Mortg. Co. v. Lee*, 91 Mass. App. Ct. 1121 (2017) (Rule 1:28

6

decision) (collecting cases); *see also Sullivan v. Kondaur Cap. Corp.*, 85 Mass. App. Ct. 202, 213 (2014); *Everton v. HSBC Bank USA, N.A.*, No. 18-cv-10264-FDS, 2018 WL 5084838, at *6 (D. Mass. Oct. 17, 2018). An example from this Court is illustrative: "[A]n assignment to an individual referred to therein as 'John Smith' would not be invalidated solely because a separate document existed referencing the middle name of that individual." *Pinto v. HSBC Bank, N.A.*, No. 12-cv-11332-LTS, 2012 WL 6622493, at *3 (D. Mass. Dec. 18, 2012) (omission of three words from the assignment describing the trust "is not of significance" and "does not itself render the reference in the assignment incorrect"). Because Pereira has failed to plausibly allege that the March 2021 assignee and the June 2022 assignor are not the same entity, he fails to state a claim that the June 2022 assignment is void, and the defendants' motion will be granted as to that claim.

## II.     The Cure Notice Is Contractually and Statutorily Compliant.

Pereira next claims that the defendants cannot accelerate his mortgage and foreclose on his property because their March 2023 cure notice failed to strictly comply with Massachusetts law and the terms of his mortgage contract. Again, the Court is not persuaded.

As "a non-judicial foreclosure state," Massachusetts "allows a mortgagee to foreclose on a mortgaged property without judicial authorization, so long as the mortgage instrument grants that right by reference to the statutory power of sale." *Thompson v. JPMorgan Chase Bank, N.A.*, 486 Mass. 286, 291 (2020) (quotation marks omitted). To exercise that "statutory power of sale," a mortgagee must "first compl[y] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." M.G.L. c. 183, § 21. "Because of the 'substantial power . . . to foreclose in Massachusetts without judicial oversight,'" the Supreme Judicial Court "repeatedly ha[s] emphasized that 'one who sells under a power [of sale] must follow strictly its terms; the failure to do so results in no valid execution of the power, and the sale

is wholly void.'" *Thompson*, 486 Mass. at 291 (quoting *Federal Nat'l Mtge. Ass'n v. Marroquin*, 477 Mass. 82, 86 (2017)).

The "regime of strict compliance" does not, however, require the "mortgagee to 'demonstrate punctilious performance of every single mortgage term.'" *Id.* at 292 (quoting *Pinti v. Emigrant Mtge. Co.*, 474 Mass. 226, 235 (2015)). The mortgagee must demonstrate strict compliance with "'(1) terms directly concerned with the foreclosure sale authorized by the power of sale in the mortgage, and (2) those prescribing actions the mortgagee must take in connection with the foreclosure sale—whether before or after the sale takes place.'" *Id.* at 292 (quoting *Pinti*, 472 Mass. at 235). Strict compliance is not mandated for other requirements, including, as relevant here, the pre-acceleration notice requirements set forth in M.G.L. c. 244, § 35A. *Id.* at 292-93; *U.S. Bank Nat'l Ass'n v. Schumacher*, 467 Mass. 421, 422 (2014). Section 35A guarantees mortgagors the right to cure a default by making "full payment of all amounts that are due" within 90 days, during which time the mortgagee cannot "accelerate" the mortgage obligation—that is, demand full payment of the loan—and begin foreclosure proceedings on the property. M.G.L. c. 244, § 35A(a)-(b). The statute also prescribes the content of the notice that must be given for this 90-day right to cure. *Id.* § 35A(c); *see Thompson*, 486 Mass. at 289. Such notices must inform the borrower of, among other things, their right to cure the default, the amount owed, the date before which they must cure, and that failure to cure may result in acceleration and foreclosure. M.G.L. c. 244, § 35A(c). Since Section 35A "is designed to give a mortgagor a fair opportunity to cure a default before the debt is accelerated and before the foreclosure process is commenced," the right to cure "is a preforeclosure undertaking" that does not "'relat[e] to the foreclosure of mortgages by the exercise of a power of sale.'" *Schumacher*, 467 Mass. at 431 (quoting M.G.L. c. 183, § 21).

To implement Section 35A, the Division of Banks "has issued regulations specifying the precise form that this notice must take." *Thompson*, 486 Mass. at 289 (citing 209 C.M.R. § 56.04).

In *Thompson*, the Supreme Judicial Court described what is known as a "hybrid notice"—that is, one that provides the borrower with the notice required by Section 35A and the notice required by paragraph 22 of the standard-form mortgage used in Pereira's case. *Id.* at 292-93; *see also Diplomat Prop. Manager, LLC v. Wilson*, 99 Mass. App. Ct. 1104 (2020) (Rule 23.0 decision) (describing hybrid notices as "permitted, and even preferred"). Paragraph 22 of the mortgage states, in pertinent part, as follows:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Complaint ¶ 14; ECF 11-1, ¶ 22. Because "the provisions of paragraph 22 constitute 'terms of the mortgage' governing the power of sale," the mortgagee must "comply strictly with paragraph 22's notice of default provisions" in any hybrid notice. *Pinti*, 472 Mass. at 240; *see Thompson*, 486 Mass. at 292 n.7. Those provisions must "be accurate and not deceptive." *Thompson*, 486 Mass. at 293. Those portions of the hybrid notice addressing the notice provisions required by Section 35A are not, however, held to the same standard of strict compliance. *Id.* at 292 n.7.

9

The parties agreed at the hearing that, for purposes of this motion to dismiss, the March 2023 cure notice sent to Pereira should be regarded as a "hybrid notice" sent to satisfy J.P. Morgan's obligations under paragraph 22 of Pereira's mortgage contract and Section 35A. The paragraph 22 provisions of that notice adhere to the strict compliance standard. In accordance with paragraph 22(a), the notice is entitled "90-Day Right to Cure *Your Mortgage Default*" and explains that Pereira is in default because he "did not make [his] monthly loan payment[s]" to Rushmore between September 2022 and March 2023. ECF 11-5, at 1 (emphasis added). Per paragraph 22(b), the notice describes how Pereira can cure the default and "avoid foreclosure by paying the total past due amount" of $8,638.85 "before a foreclosure sale takes place." *Id.* at 2. Per paragraph 22(c), the notice states that Pereira can cure the default by paying that amount "on or before 06/04/2023, which is 90 days from the date of this notice," more than the thirty days required under the mortgage. *Id.* at 1. Per paragraph 22(d), the "Additional Disclosures" section of the notice states that "[f]ailure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the property." *Id.* at 4. And in line with the third sentence of paragraph 22, that same section specifies that Pereira has "the right to reinstate the loan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale." *Id.*

Pereira nonetheless contends that the notice contained misleading and contradictory additional language regarding his right to reinstate the mortgage after acceleration.[5] He challenges

---

[5] The complaint also alleges that the defendants did not send, and Pereira did not receive, the cure notice. Complaint ¶¶ 2, 26, 30. But whether he received the notice is beside the point because the mortgage states, in relevant part, that a notice "shall be deemed to have been given to Borrower when mailed by first class mail," not received or delivered. ECF 11-1, ¶ 15. And at the motion hearing, Pereira conceded that the notice was sent. Thus, Rushmore satisfied the mortgage by indisputably sending the notice in March 2023 by certified mail, ECF 11-5, at 1, which is "a type

the notice's statement, in the "Additional Disclosures" section, that Rushmore "reserves the right to accept or reject a partial payment of the total amount due without waiving its right to proceed with foreclosure." ECF 11-5, at 4; Complaint ¶¶ 31-32. In Pereira's telling, the use of the phrase "total amount due," rather than "total *past* amount due," is "contrary to, waters down and infringes upon [his] unequivocal right to reinstate the mortgage by paying less [than] the accelerated amount 'anytime' before the foreclosure." ECF 14, at 2. This is because, according to Pereira, the phrase "total amount due" might be read to refer to the post-acceleration amount—that is, the entire sum secured by the loan, as the term is used in M.G.L. c. 244, § 35A(c)(8)—rather than the past-due reinstatement amount, and could thus confuse a reasonable borrower about what must be paid in order to reinstate the loan.[6] Pereira's interpretation is consistent with how the phrase is used on that same page of the notice, which states that Pereira "may redeem the property by paying the *total amount due* prior to the foreclosure sale." ECF 11-5, at 4 (emphasis added). Under Pereira's reading, Rushmore could proceed with foreclosure even if, for example, Pereira were to pay, by June 4, 2023, a part of the post-acceleration amount that exceeded the full past-due amount.[7]

When read in the context of the entire notice, however, the challenged phrase "total amount due" can reasonably mean only "the total past due amount of $8,638.85," not the post-acceleration

---

of first-class mail," *O'Brien v. Nationstar Mortg. LLC*, No. 23-cv-10774-LTS, 2023 WL 5438792, at *2 (D. Mass. July 25, 2023).

[6] After acceleration, J.P. Morgan "may require immediate payment in full of all sums secured by" the mortgage and "shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including . . . reasonable attorneys' fees and costs of title evidence." ECF 11-1, ¶ 22; *see id.* ¶ 19 ("reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting [J.P. Morgan's] interest in the Property").

[7] The complaint and Pereira's opposition to the motion to dismiss also quote additional language to support his position, but, as Pereira's counsel conceded at the motion hearing, that language does not appear in the notice itself. *Compare* ECF 11-5, *with* Complaint ¶ 33, *and* ECF 14, at 4, 9-12; *see* ECF 11, at 15 n.4.

amount of the entire loan. ECF 11-5, at 2; *see O'Brien v. Nationstar Mortg. LLC*, No. 23-cv-10774-LTS, 2023 WL 5438792, at *3 (D. Mass. July 25, 2023) (rejecting identical argument); *Davalos v. HSBC Bank USA, Nat'l Ass'n as Tr. for Freemont Home Loan Tr., 2006-E, Mortg.-Backed Certificates, Series 2006-E, Newrez LLC*, No. 23-cv-10270-DJC, 2023 WL 3984832, at *5 (D. Mass. June 13, 2023) (same). The notice repeatedly references the past-due amount. *See* ECF 11-5, at 1 (referencing "the past due amount" twice); *id.* at 2 (referencing the same once and "the total past due amount" twice). And in March 2023, when Rushmore mailed the notice, Pereira's debt had not been accelerated, nor did the notice purport to accelerate it. *See* ECF 11-5. To the contrary, the notice informed Pereira of his right to pay "the total past due amount" to cure his default and warned him that "[f]ailure to cure the default . . . *may result in acceleration*." *Id.* at 2, 4 (emphasis added). Absent acceleration, $8,638.85 was the only amount due. Additional language can, in some circumstances, cloud the meaning of an otherwise compliant notice. *See Aubee v. Selene Fin. LP*, 56 F.4th 1, 6-8 (1st Cir. 2022). But here, Pereira has not plausibly alleged that the omission of the word "past" from the "total amount due" in the challenged statement of this *pre-acceleration* notice renders the phrase ambiguous or contradictory, even under a strict compliance standard. *See O'Brien*, 2023 WL 5438792, at *3; *Davalos*, 2023 WL 3984832, at *4-*5; *Est. of Orre v. Ocwen Loan Servicing, LLC*, No. 19-cv-10553-TSH, 2023 WL 2743338, at *4-*5, *5 n.9 (D. Mass. Mar. 31, 2023).

Section 35A and the terms of the mortgage confirm that the challenged phrase "total amount due" refers to the reinstatement amount. The statute provides that "[a]ny mortgagor . . . shall have a 90-day right to cure a default . . . by full payment of all amounts that are due *without acceleration* of the maturity of the unpaid balance of such mortgage." M.G.L. c. 244, § 35A(a) (emphasis added). Notably, section 35A refers to "all amounts" and, like the challenged statement

12

here, does not use the word "past." Section 19 of the mortgage similarly states that Pereira may pay "all sums which then would be due under" the mortgage and accompanying promissory note "as if no acceleration had occurred," and that "this right to reinstate shall not apply in the case of acceleration." ECF 11-1, ¶ 19. Again, there is no reference to the "past" sums due. The mortgage also provides that J.P. Morgan "may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current," and that it "may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future." *Id.* ¶ 1. Thus, consistent with the disputed language in the notice, J.P. Morgan could reject Pereira's payment if it were less than the total past-due amount because that payment would be insufficient to make his loan current.

In short, the hybrid notice sent by the defendants in March 2023 complied with Pereira's mortgage contract and Massachusetts law. Because Pereira fails to state a claim that the notice is inaccurate or deceptive, the defendants' motion will be granted.

## CONCLUSION AND ORDER

For the foregoing reasons, the defendants' motion to dismiss the complaint, ECF 10, is GRANTED.

SO ORDERED.

Dated: February 3, 2025

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

13